UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| NICOLE WINGFIELD, | ) | CASE NO. 5:12CV2620 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | **ORDER AND DECISION** |
| ESCALLATE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter appears before the Court on Defendant Escallate, LLC's Motion for Summary Judgment on all remaining claims.  Doc. 25.  For the following reasons, Defendant's motion is GRANTED.

I.      **FACTS AND PROCEDURAL HISTORY**

Plaintiff Nicole Wingfield began working for Defendant in October 2009 as a Collection Specialist.  Doc. 29.  She was an hourly, at-will employee.  Doc. 29.  As a Collection Specialist, Plaintiff contacted debtors over the phone to collect payments on outstanding debts.  Doc. 26.  Plaintiff was often late to work.  For example, she was tardy 52 times in 2010 and 50 times in 2011.  Doc. 29.  Plaintiff could not consistently meet collection requirements. Doc. 29.  In 2010 and 2011, she met nonbinding collection goals only seven and two times, respectively. Doc. 29.

Plaintiff attributes her performance struggles to chronic migraine headaches.  Doc. 26.  Plaintiff took leave pursuant to the Family Medical Leave Act (hereinafter "FMLA") in October, 2011 for gastric bypass surgery and again in 2012 for migraines.  Doc. 25.  Due to these persistent headaches, Plaintiff requested certain accommodations from Defendant.  Doc. 26.  Plaintiff requested a seat change in May 2011 and again in June so that she could prop an ice

1

pack against a wall to help alleviate the effects of her migraines.  Doc. 26.  Defendant complied with Plaintiff's request.  Doc. 26.

On April 30, 2012, Plaintiff requested a screen shade for her computer to reduce the brightness of her computer screen.  Doc. 26.  Defendant sent an IT specialist to her desk to change the computer screen brightness level, and Plaintiff expressed her satisfaction with the change.  Doc. 29.

In 2012, Defendant implemented a new Collection Performance Policy.  Doc. 25.  This policy applied to all Collection Specialists and required each of them "to have a three-month rolling average of $101.01 collected per hour worked."  Doc. 25.  Under the policy, if a Collection Specialist did not meet the goal, he or she would be subject to a disciplinary scheme set up under the policy.  Doc. 25.  For the first three months that the employee did not meet the goal, the employee would receive a written warning.  Doc. 25.  If the employee failed to meet the goal a fourth month, the policy called for termination.  Doc. 25.

Plaintiff received written warnings on April 9, May 8, and June 14 of 2012 for failing to meet the company's performance policy.  Doc. 25.  After receiving these written warnings, Plaintiff requested a transfer to a different department that would better accommodate her migraines. Doc. 25.  She also requested that Defendant lower her performance goals.  Doc. 25. Defendant did not approve either request. Doc. 25.  Plaintiff argues that Defendant granted a request from a different employee to transfer to another department within the company. Plaintiff claims this demonstrates that approving Plaintiff's transfer would not have caused undue hardship for the Defendant.  Doc. 25.

Plaintiff failed to meet Defendant's collection policy for a fourth time, which resulted in her termination on July 5, 2012.  Doc. 25.  Plaintiff alleges that Defendant caused her failure to

meet requirements by redirecting "promise" accounts to other employees. Doc. 26.  Plaintiff also alleges that Defendant was purposefully sending her uncollectible accounts.  Doc. 26.

On September 20, 2012, the Plaintiff filed a Complaint against the Defendant in the Stark County Court of Common Pleas.  Doc. 1.  The Complaint alleged six counts: 1) retaliatory discharge in violation of the FMLA; 2) disability discrimination; 3) wrongful termination based on disability discrimination; 4) failure to provide reasonable accommodations; 5) wrongful termination in violation of public policy; and 6) intentional infliction of emotional distress.  Doc. 1. On October 19, 2012, the case was removed to this Court.  Doc. 1.  The Court then dismissed Count Five of Plaintiff's Complaint on December 21, 2012.  Doc. 11.  The Defendant later moved for summary judgment on the remaining claims. Doc. 25.

## II.    LEGAL STANDARD

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a). Furthermore, the Court must view the evidence presented in a light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587-88. The burden then shifts to the non-moving party to show there is a genuine issue of material fact for trial.  *Bell v. Ohio State Univ.*, 351 F.3d 240, 253 (6th Cir. 2003).   The non-moving party may not rest upon the mere allegations or denials set forth in the pleadings, but must provide a response using affidavits or as otherwise provided in Fed.R.Civ.P. 56.  "Merely conclusory and unsupported allegations, rooted in speculation, do not meet that burden."  *Bryant v. Commonwealth of KY*, 490 F.2d 1273, 1274 (6th Cir. 1974) (per curiam).

3

III.     **LEGAL ANALYSIS**

   **A. COUNT ONE: Retaliatory Discharge in Violation of the FMLA**

   Plaintiff alleges that Defendant terminated her employment in retaliation for taking FMLA leave in 2012. Doc. 1. Defendant argues that the retaliatory discharge claim fails because it terminated Plaintiff pursuant to company policy. Doc. 25.   For an FMLA retaliation claim, a burden-shifting test is applied.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 508 (6th Cir. 2006). The plaintiff must first establish a prima facie case of discrimination by showing the following: 1) the plaintiff notified her employer that she intended to take FMLA leave; 2) the plaintiff "suffered an adverse employment action;" and 3) a causal connection exists between her FMLA leave and the alleged adverse employment action.  *Id*.  A plaintiff must put forth credible evidence that would allow the Court to deduce a causal connection between the FMLA leave and the adverse employment action.  *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

   If a plaintiff can show the three elements, the burden then shifts to the employer to establish a "legitimate, nondiscriminatory rationale for discharging the employee."  *Edgar*, 443 F.3d at 508.  If the employer establishes such a rationale, the burden then shifts back to the plaintiff to show that the reason is pretextual.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

   In this case, the parties agree that Plaintiff notified Defendant that she was going to take FMLA leave. Doc. 25. Furthermore, the parties agree that Plaintiff meets the adverse employment action element because Defendant terminated her. *Id*. Accordingly, it is undisputed that the Plaintiff meets the first two elements for discrimination.

   The parties dispute whether Plaintiff can establish the third element of an FMLA claim. Plaintiff argues that causation exists because she began experiencing problems at work soon after

she returned from FMLA leave in 2012. Doc. 26. To the contrary, Defendant argues that causation does not exist because termination resulted from her failure to meet the Collection Performance Policy.  Doc. 25.   "A causal connection is established by the presentation of evidence 'sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'"  *Cantrell v. Nissan North America Inc.*, 145 Fed.Appx. 99, 105 (6th Cir. 2005) (internal citation omitted).  The plaintiff must produce evidence that would allow a reasonable juror to conclude that the adverse employment action would not have happened if the plaintiff had not exercised her right.  *Eckerman v. Tennessee Dept. of Safety*, 636 F.3d 202, 209 (6th Cir. 2010).

Further, a court can infer that retaliation motivated the employer's action when the "employer treats an employee differently after she asserts her rights."  *Cantrell*, 145 Fed.Appx. at 105-106; *see Green v. Wal-Mart Stores, East, L.P.*, No. 3:11-CV-440, 2013 WL 3223629, at *8 (S.D. Ohio June 25, 2013) (finding sufficient evidence of causation when the employer had a set policy but employee was not disciplined for multiple absences before taking FMLA leave but was disciplined for absences after taking FMLA leave).

1. Plaintiff cannot demonstrate a genuine issue of material fact for the causation element of an FMLA claim.

Plaintiff argues that Defendant took "promise accounts" away from her soon after she returned from FMLA leave and, thus, impeded her ability to meet sales requirements. Doc. 26. Looking at the facts in the light most favorable to Plaintiff, she has not demonstrated a genuine issue of material fact on the essential element of proximate cause.

The Plaintiff has not produced evidence that would allow a reasonable juror to conclude that the adverse employment action would not have happened if the Plaintiff had not exercised her right to FMLA leave. In her deposition, Plaintiff testified that other employees did not

receive credit for accounts. Doc. 25.  Thus, even if, certain accounts were taken away from Plaintiff, this fact alone does not permit the inference that taking FMLA leave caused her to lose credit for accounts.

Plaintiff also acknowledged that, prior to 2012, she had difficulty meeting the required goals. Doc. 25.  Plaintiff's employment reviews show that she only met her monthly collections requirement for seven months in 2010 and only two months in 2011.  Doc. 25.  After returning from leave in 2012, her productivity was consistent with her past performance.

Because the Plaintiff routinely failed to meet collection requirements before 2012, a reasonable juror could only conclude that failure to meet company policy resulted in Plaintiff's termination, and not the use of FMLA leave. As such, Plaintiff cannot demonstrate a genuine issue of material fact on the element of causation.

> 2. <u>Defendant can demonstrate a legitimate and nondiscriminatory reason for termination.</u>

Assuming *arguendo* that Plaintiff meets her initial burden by establishing the three elements, Defendant demonstrates a legitimate and nondiscriminatory reason for termination. It is undisputed that Plaintiff did not meet her collections goals for each month in 2010 and 2011. Doc. 25.  Plaintiff was spared discipline for failure to meet averages in these years because the Collection Performance Policy did not come into effect until 2012. Doc. 25.

Under the new policy, an employee would have three opportunities to increase his or her collections before termination.  Doc. 25.  When Plaintiff returned from FMLA leave, she still was unable to meet performance requirements and was subject to the discipline policy.  Doc. 25. She failed to meet the requirement for a fourth time and, pursuant to the policy, she was terminated. Doc. 25.  Therefore, Defendant meets its burden to establish a legitimate and non-discriminatory reason for terminating Plaintiff's employment.

3. <u>Plaintiff cannot show that the Defendant's reason for termination is pretextual.</u>

A plaintiff can show pretext by demonstrating "either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate…discharge, or (3) that they were *insufficient* to motivate discharge." *Manzer v. Diamond Shamrock Chemicals Co*., 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds). "[T]o survive summary judgment a plaintiff need only produce enough evidence...to rebut, but not disprove, the defendant's proffered rationale." *Jones v. St. Jude Medical S.C. Inc.*, 504 Fed.Appx. 473, 477 (6th Cir. 2012) (citing *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007). To rebut the proffered rationale, the weight of evidence offered by the Plaintiff must make it more likely than not that the explanation is pretextual. *Jones*, 504 Fed.Appx. at 477 (citing *Manzer*, 29 F.3d at 1084). Temporal proximity between FMLA leave and the adverse employment action does not, alone, establish pretext. *Skrjanc*, 272 F.3d at 317.

Plaintiff cites *Green*, 2013 WL 3223629 at *8-*9, for the proposition that any evidence additional to proximity is sufficient to create a genuine issue of material fact. Doc. 26.  In particular, Plaintiff claims that she lost promise accounts and started getting more uncollectable calls after she used FMLA leave. *Id*. She also argues that other struggling employees were allowed to transfer, but she was not. *Id*.

Plaintiff incorrectly states the holding from *Green*. The court in *Green* simply observed that the plaintiff, in that case, produced more evidence than just temporal proximity to establish pretext. *Green,* 2013 WL 3223629 at *8-*9.  This is not say that any additional evidence is sufficient to rebut the proffered rationale—Plaintiff must still offer evidence, whatever combination of temporal and other evidence, sufficient to show that it is more likely than not that the Defendant's explanation is pretextual.

7

Plaintiff cannot demonstrate evidence to create a genuine issue of material fact as to whether Defendant's stated reason for termination is pretextual. Even when the Court construes the evidence in a light most favorable to the Plaintiff, the facts regarding promise accounts and uncollectable calls, at best, create mere speculative inferences. These inferences cannot be regarded as evidence. *Goodman v. Simonds*, 61 U.S. 343, 359 (1857).  Plaintiff testified in her deposition that other collection specialists had not received credit for accounts. Doc. 25. She also presents emails to her supervisors and a co-worker's testimony that, in general, the collectability of calls had dropped. Doc. 26. There is simply insufficient evidence to allow a reasonable fact finder to adduce how Plaintiff's account loss varied from those of other collection specialists. Thus, the evidence on promise accounts is speculative.

Plaintiff also asks that the Court to speculate on the collectability of calls. Plaintiff's coworker testified: "It seems like we weren't getting quality calls, quality accounts." Doc. 26. Even if the quality of calls did deteriorate, there is nothing from the evidence to prove causation – i.e., that Defendant was responsible for this deterioration. Any inference on that second step would be improper speculation.

Because Plaintiff fails to prove a causal connection between her FMLA leave and her termination, she fails to establish the third element of her claim. Plaintiff cannot show that Defendant's reasons for termination are pretextual. Thus, Plaintiff cannot meet her initial burden of establishing a genuine issue of material fact as to her FMLA claim for retaliatory discharge. Because there is no issue of material fact that Defendant terminated the Plaintiff pursuant to a company performance-based policy, Defendant is entitled to judgment as a matter of law.

**B. COUNTS TWO, THREE, and FOUR: Disability Discrimination, Wrongful Termination, and Failure to Provide Reasonable Accommodation**

Since Plaintiff's disability claims are closely related, this Court will analyze Counts Two, Three, and Four together:

In her Complaint, Plaintiff alleges that Defendant perceived her as disabled and in consequence, discriminated against her (Counts Two and Three respectively).[1]  Doc. 1. Further, Plaintiff alleges in Count Four that Defendant failed to provide reasonable accommodations for her perceived disability – i.e., her migraines.  *Id.*  Defendant argues that it did not perceive Plaintiff as disabled; and therefore, the discrimination, termination, and reasonable accommodation claims must fail.  Doc. 25.

Each of these three claims are brought under O.R.C. 4112.02 and depend partially on whether the Plaintiff was disabled.  The Ohio Revised Code defines an individual as "disabled" if she has a "physical or mental impairment that substantially limits one or more major life activity, including the functions of caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working; a record of physical or mental impairment; or being regarded as having a physical or mental impairment." O.R.C. 4112.01(A)(13).

Similarly, the Americans with Disabilities Act ("ADA")[2] defines one as "disabled" if he: "(1) 'has a physical or mental impairment that substantially limits one or more of the major life activities of such individual'; (2) 'has a record of such impairment;' or (3) is regarded by her

---

[1] In her opposition to the motion for summary judgment, Plaintiff changes her allegation from Defendant perceiving her as disabled to she is and was disabled.  Docs. 1 and 26.  Plaintiff did not amend her complaint to reflect this change in allegations.  However, changing Plaintiff's allegation does not change this Court's decision.

[2] Due to the similarity of Revised Code provisions on disability discrimination and those of the Americans with Disabilities Act ("ADA"), Ohio courts consider regulations and cases interpreting the ADA when deciding on Ohio law. *Columbus Civ. Serv. Comm. V. McGlone*, 82 Oh. St.3d 569, 573; 697 N.E.2d 204, 206 (Ohio, 1998).

employer as having such an impairment." *Gruener v. Ohio Cas. Ins. Co.*, 510 F.3d 661, 664 (6th Cir. 2008) (quoting *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999)).

The Plaintiff has admitted in deposition testimony that she did not have a disability, an admission that severely damages her claims. Doc. 25. Such an admission precludes satisfaction of the first definition of the ADA.  By admitting that she was not disabled, Plaintiff admits also that she was not substantially limited in major life activities. It also costs Plaintiff the second definition, since records regarding migraines do not record an "impairment of a major life activity." Therefore, the Plaintiff fails to satisfy the first two definitions of "disabled" under the ADA.

In trying to demonstrate that she was disabled, the Plaintiff has also relied upon *Maley v. EMH Regional Health Care Center*, 2010 WL 907970 (N.D. Ohio, 2010).  The instant case differs from *Maley* for several reasons.  The plaintiff in *Maley* never admitted that she did not have a disability.  Additionally, she was "unable to drive, exercise, be up and around, or perform relatively simple work tasks, e.g. reading, walking, lifting, and bending" on a consistent basis. *Id.*

Here, there is no evidence that the Plaintiff could not do these or similar activities.  In fact, the only cognizable limitation is that she requires a quiet room. The need to get up and sit in a quiet room for a few minutes does not rise to the level of impairment applicable in *Maley*.  *See* Doc. 26.

Finally, the letter offered here, unlike in *Maley*, is an unsworn assertion.  It is not, as the Plaintiff claims, an affidavit. As such, it does not satisfy Fed.R.Civ.P. 56(e) for admissibility of evidence for summary judgment purposes. *See Dole v. Elliott Travel &Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991).

Thus, to show she was regarded as "disabled" under R.C. 4112.02, the Plaintiff must show that her employer regarded her as physically or mentally impaired.  To prove that the Defendant regarded her as disabled, the Plaintiff must show that "[the] employer ascribed to [her] an inability to perform the functions of a job because of a medical condition when, in fact, the individual is perfectly able to meet the job's duties." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 706 (6th Cir. 2001). More precisely, the Plaintiff must establish that the Defendant misperceived her abilities in either of two ways: (1) that the Plaintiff had a substantially limiting impairment that she did not have; or (2) that the Plaintiff had a substantially limiting impairment when the impairment was not truly so limiting. *Sutton v. United Air Lines*, 527 U.S. 471, 489 (1999).[3]

General knowledge or notice about an employee's medical treatment or condition, alone, is insufficient to overcome summary judgment on a claim that an employer "regarded" the employee as disabled.  *Field v. Medlab Ohio, Inc.*, 2012 WL 5366611 at *6 (Ohio Ct. App., 8th Dist. 2012) (citing *Olson v. Dubuque Community School Dist.*, 137 F.3d 609 (8th Cir. 1998)). "An employer has notice of the employee's disability when the employee tells the employer that he is disabled."  *Hammon v. DHL Airways, Inc.* 165 F.3d 441, 450 (6th Cir. 1999) (citing *Gantt v. Wilson Sporting Goods, Co.*, 143 F.3d 1042, 1046 (6th Cir. 1998)). Awareness of the employee's condition, from whatever source, is necessary for a "regarded as" claim, but it is not sufficient. *Olson*, 137 F.3d at 612.

In an email dated June 17, 2011 from the Plaintiff to James White, her ultimate supervisor and Vice President in charge of collections, she indicated that she had migraines. Accordingly, through White, Defendant had notice of her condition.  However, simply having

---

[3] Abrogated on other grounds by statute, ADA Amendments Act of 2008, Pub.L. 110–325, 122 Stat. 3553, *Sutton*'s language on this point has been retained by the 6th Circuit in *Baker v. Windsor Republic Doors*, 414 Fed. Appx. 764, 771 (6th Cir. 2011)).

notice of the condition does not necessarily mean that the Defendant regarded the Plaintiff as disabled.

From the evidence provided, the Plaintiff cannot show that there is a genuine issue of material fact about whether the Defendant regarded her as disabled.  The Plaintiff was granted FMLA leave twice for migraines without rejection. Doc. 26.  When she returned, the Plaintiff returned to her work without limitation or alteration in work standards.  Doc. 25 and 26.

The Plaintiff admits that she thought the Defendant regarded her as disabled purely based on the submission of FMLA papers by her doctor.  Doc. 26.  Wellock, Defendant's President and CEO, did not know or have any conversations with the Plaintiff about her migraines and was unaware she had them until the Plaintiff complained of discrimination. *Id*.  Dawn Oliver, who managed Human Resources for the Defendant, admitted that although she thought the Plaintiff had a health risk from her migraines, she did not view that risk as a disability. *Id*. Outside of Plaintiff's own statements, none of the emails suggest that the Defendant viewed the Plaintiff as having a disability.  The evidence demonstrates that the Defendant did not regard the Plaintiff as disabled.

1.  Plaintiff's claim for wrongful termination by disability discrimination fails because she has not shown she was disabled or regarded as disabled.

To show that she was wrongfully terminated because of disability discrimination, the Plaintiff must demonstrate (1) that she was disabled; (2) that an adverse employment action was taken, at least in part, because she was disabled; and (3) that she, though disabled, could safely and substantially perform the essential functions of the job. *Hood v. Diamond Products, Inc*., 74 Ohio St.3d 298, 658 N.E.2d 738 (Ohio 1996).  As discussed above, the Plaintiff has failed to show either that the Plaintiff was disabled or regarded as disabled; therefore, the claim of wrongful termination fails on the first element.

2. Plaintiff's claim for failure to provide reasonable accommodations fails because an employer has no obligation to accommodate an employee that is not actually disabled.

To show that Defendant failed to provide reasonable accommodations for her disability, Count Four, the Plaintiff must demonstrate (1) that she was disabled; (2) that she was otherwise qualified for the position, with or without reasonable accommodation; (3) that her employer knew or had reason to know about her disability; (4) an accommodation was needed, in the sense that a causal relationship existed between the disability and the request for accommodation; and (5) the employer failed to provide the necessary accommodation. *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) (citing *Gaines v. Runyon*, 103 F.3d 1171, 1175-1176 (6th Cir. 1997)). Plaintiff cannot satisfy these elements.

There is no genuine issue of material fact as to the first element.  As discussed above, the Plaintiff relies on her speculation that Defendant regarded her as disabled.  However, this speculation cannot resuscitate Plaintiff's claim since there is no obligation for an employer to reasonably accommodate an employee when the latter is only regarded as, and not actually, disabled. *Workman v. Frito-Lay, Inc.*, 165 F.3d 460,467 (6th Cir. 1999) (citing 29 C.F.R. § 1630.2(l)(1)-(3)).  With no legal basis for recovery on this claim, Count Four cannot survive.  As such, the court grants judgment as a matter of law in favor of Defendant on Counts Two, Three, and Four.

**C.     COUNT SIX: Intentional Infliction of Emotional Distress**

Plaintiff alleges that Defendant intentionally sought to cause her emotional distress by issuing warnings and terminating her for failure to meet performance goals.  Doc. 26.  Defendant argues that Plaintiff cannot meet any of the elements of a claim for intentional infliction of emotional distress (hereinafter "IIED") and, thus, it fails as a matter of law. Doc. 25.  This Court

has jurisdiction to hear this state law claim under 28 U.S.C. § 1367(a), which grants supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

In order to maintain an IIED claim under Ohio law, Plaintiff must show that Defendant intentionally or recklessly caused severe emotional distress to Plaintiff by extreme and outrageous conduct.  *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of America*, 6 Ohio St. 3d 369, 374 (1983).  The Ohio Supreme Court defined extreme and outrageous conduct as follows:

> It has not been enough that the defendant acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive  damages for another tort.  Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

*Id*. at 374-375 (internal citations omitted).   Therefore, Plaintiff must establish the following four elements: 1) Defendant "either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff," 2) Defendant's conduct was extreme and outrageous, 3) Defendant's conduct was the "proximate cause of plaintiff's psychic injury," and 4) "the mental anguish suffered by plaintiff is serious and of a nature that 'no reasonable man could be expected to endure it.'"  *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34 (1983).

Here, for the first element, Plaintiff cannot demonstrate that Defendant intended to cause her emotional distress or knew, or should have known, that terminating her

would cause serious emotional distress.  Plaintiff offers no evidence pertinent to the first element of the claim to suggest that Defendant intended to cause her emotional distress or knew that upon her termination she would suffer from serious emotional distress. Because there is no offer of such evidence, the Plaintiff fails to satisfy the first element of her claim.

Further, even if Plaintiff could meet the first element, Defendant's conduct was not extreme and outrageous. Even if an employer knows that firing an employee would result in serious emotional distress, the employer may exercise its rights to terminate an at-will employee.  *Foster v. McDevitt*, 31 Ohio App. 3d 237, 239 (1986). Plaintiff complains that Defendant treated her differently after taking FMLA leave by issuing warnings and terminating her.  This does not rise to a level of conduct where an average member of the community would exclaim, "Outrageous!" Termination is insufficient to establish outrageous conduct because the employer is permitted by law to exercise such a right. Because the Defendant acted within its rights in terminating the Plaintiff, Defendant's conduct was not extreme and outrageous as a matter of law, and the second element of the claim fails.

Given this, Plaintiff cannot establish a genuine issue of material fact as to the first and second elements of a claim for IIED, and the Court need not continue its analysis. The Court grants judgment as a matter of law in favor of Defendant on Plaintiff's claim for intentional infliction of emotional distress.

**IV.     CONCLUSION**

For the reasons set forth herein, the Defendant's motion for summary judgment is GRANTED on all claims.

IT IS SO ORDERED.


DATE: September 29, 2014                    _/s/ John R. Adams_____
                                            Judge John R. Adams
                                            UNITED STATES DISTRICT COURT

16